**JAMES R. TANNER, No. 3189**
**TANNER LAW OFFICE PLLC**
**ATTORNEY FOR PLAINTIFF**
**250 SOUTH MAIN**
**TOOELE, UT 84074**
**Telephone: (435) 833-9524**
**jim.tanner@msn.com**
**Facsimile: (435) 578-8060**

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH
## CENTRAL REGION

---

|  |  |
|---|---|
| | **COMPLAINT** |
| **Dr. Martin Woesler,** | |
| | |
| **Plaintiff,** | **(JURY TRIAL DEMAND)** |
| **vs.** | |
| | **Case No.** |
| | |
| **Utah Valley University,** | |
| **and the State of Utah,** | |
| | |
| **Defendants.** | **Judge** |

---

## INTRODUCTION

1. The Plaintiff, Dr. Martin Woesler, through counsel, complains of the Defendants, Utah

Valley University and the State of Utah, due to acts of agents and employees of these

Defendants, who engaged in discriminatory acts of race and national origin discrimination and

retaliation, as well as breach of an employment contract with the Plaintiff.

**JURISDICTION**

2.This employment discrimination action is brought pursuant to VII of the Civil Rights Acts of 1964 and 1991 (42 U.S.C. §§2000e), as amended, Section 1981 of the Civil Rights Act of 1866, and the Equal Protection Clause of the U.S. Constitution, against his employer, Utah Valley University and the State of Utah, doing business as Utah Valley University. The Plaintiff alleges that Utah Valley University has continuously been and is now conducting business in the State of Utah, and is covered by the provisions of the statutes referenced above.  The Plaintiff alleges that the employment practices, alleged to be unlawful and discriminatory in this complaint, were engaged in by agents of Utah Valley University in Orem City, Utah County, Utah, within the Central Region of the U.S. District Court for the District of Utah.

**SUBJECT MATTER JURISDICTION**

3. This Court has subject matter to hear this dispute, as a federal question, under 28 U.S.C. § 1331.  The Plaintiff alleges that he filed an administrative EEO charge with the Phoenix Regional EEOC Office, on the basis of race and retaliation, on April 25, 2013.    The Plaintiff alleges that he has exhausted his administrative remedies and he has filed his right to sue letter, as Exhibit 1 to this Complaint.

**B. PARTIES**

4.  Plaintiff, Dr. Martin Woesler is a citizen of the Federal Republic of Germany and he was a resident of the State of Utah, at the time of the acts complained. Plaintiff was employed by Utah Valley University, until his discharge from employment on June 30, 2013.  Defendant employer, Utah Valley University, is located at 800 West University Parkway, Orem, UT, where it operates an institution of higher learning and serves as one of several state universities for the State of Utah.

## C. NATURE OF CASE

1.  Dr. Woesler complains of discriminatory treatment by Agents of Defendants Utah Valley University and the State of Utah on the basis of race and retaliation, as prohibited by VII of the Civil Rights Acts of 1964 and 1991 (42 U.S.C. §§2000e), as amended, Section 1981 of the Civil Rights Act of 1866, and the Equal Protection Clause of the U.S. Constitution Title VII of the Civil Rights Acts of 1964 and 1991, as amended.

2.  As the Plaintiff details below, he was denied tenure and discharged as the result of subordinate bias and the unchecked acts of the Defendant's agents, including his coworker at Utah Valley University, Dr. Guofang Yuan and his supervisor, Dr. Baldomero Lago.   These acts included, but were not limited to sabotage, shunning,  defamatory and derogatory comments to others and on official university websites, withholding of communication and information, assigning Dr. Woesler a noisy and distant office, discouragement of peers and students to participate in Dr. Woesler's work and study program offers and manipulation of budgets, funding and other resources.   These acts created a hostile work environment, on the basis of race, to ensure that the interests of these agents were furthered and not threatened and that Dr. Woesler would not succeed during his first year of employment with the Defendant university.

3.  Dr. Lago (Spanish citizen, of Spanish origin) and his coworker, Dr. Yuan (Chinese citizen, of Chinese origin) openly and routinely derided Dr. Woesler as Woesler sought to perform his work at Utah Valley University.  Dr. Yuan criticized Dr. Woesler for his foreign accent (German), despite the fact that Dr. Woesler holds a  PhD in Chinese studies, has lived and worked for about 5 years in China, has taught Chinese as a foreign language at universities since 2004, has published several textbooks and research papers on Teaching Chinese as a Foreign Language and had demonstrated in a job search among more than 60 native Chinese, Chinese

American and Caucasian applicants, to the satisfaction of the University that he (Dr. Woesler) possessed the necessary competence to teach Chinese to students within its Chinese language program.

4.   The Plaintiff maintains that Dr. Yuan and Dr. Lago, his supervisor, had an unexpressed Bona Fide Occupation Qualification (BFOQ) which motived their actions - as raised by Dr. Yuan in his first work-related conversation with Dr. Woesler on July 20, 2011 at 8:30 A.M..  In this conversation Yuan informed the Plaintiff that "A white guy like you should better not teach Chinese language courses".   Dr. Woesler maintains that the Utah Valley University allows individuals who are not from the country related to their language expertise to serve as teachers and to serve in leadership positions, regarding a specific language.   For Example, the university allows Dr. Jeff Packer, who is not from Germany and does not speak German as a mother language, to serve as Coordinator of the German language.   The Agency allows Dr. Gloria Gilmore-Hunt, a teacher who is not French and who does not speak French as a mother language, to serve as a Coordinator of the French language. The Plaintiff maintains that he informed his supervisor, Dr. Lago, of the perceptions of Dr. Yuan including the view of Yuan that Caucasians were handicapped in their ability to teach Chinese.  The Plaintiff informed Lago of this fact when the two met on August 15, 2011.

5. The Plaintiff alleges that subsequent to this conversation with Dr. Lago, Lago took very few acts which were positive toward the Plaintiff.  As noted, Dr. Lago is a Spanish citizen and of Spanish origin and Dr. Yuan is a Chinese citizen and of native Chinese origin.  These individuals are beneficiaries of Title VII of the Civil Rights Acts of 1964 and 1991, and Section 1981 of the Civil Rights Act of 1866, as amended, and the Equal Protection Clause of the U.S. Constitution. They have progressed in their careers, undoubtedly because of these protections.  The Plaintiff

alleges that ironically these individuals who have received the protections of these civil rights statutes to further their own careers, have made choices to engage in routine adverse acts and communications about the Plaintiff which created a continuing pattern of racial discrimination and a hostile work environment for the Plaintiff.   He alleges that, in a university tenure hearing held on January 2, 2013, Dr. Yuan testified that his actions were backed by Dr. Lago.

6. Subsequent to the decision of the Plaintiff to challenge the perception of Dr. Yuan about the ability of white men to teach the Chinese language, Dr. Yuan and Dr. Lago made the decision to make no further assignments to the Plaintiff regarding the teaching of the Chinese language to students in the UVU Chinese Language program.  In an email of September 15, 2012, Dr. Lago stated that his reason for not assigning language courses to Dr. Woesler anymore was that they had a native Chinese adjunct teacher instead and that "we are not going to need you to teach them due to the fact that we will be hosting a [native Chinese] Hanban teacher starting in January." For the school year 2012-2013, for all courses which the Plaintiff previously taught, native Chinese Adjunct faculty were used. Only after Dr. Woesler appealed, and Dr. Lago and Dr. Yuan noticed that their racial policy was questioned, they asked the Caucasian adjunct teacher Steve Crook to teach a course again from Fall 2013 on. The Plaintiff had been terminated by this time.

7. Dr. Lago, as Chair of the Chinese Language Department, withdrew his support to advertise the Chinese Studies program which Dr. Woesler was trying to build, and at the same time strongly supported the Chinese Language Program which Dr. Yuan was building.  The budget share from the Presidential Chinese Initiative was split zero per cent for Dr. Woesler's Chinese Studies program and one hundred per cent for Dr. Yuan's Chinese Language program.   In addition, the Plaintiff alleges that Dr. Lago preempted the use of a research assistant which the

Plaintiff had successfully received funding for and diverted the services of this research assistant to the language lab under his (Dr. Lago's) supervision.  The Plaintiff was excluded, by Dr. Yuan, with the direct knowledge of Chair Dr. Lago, from Department activities and events, including a promotion table for the Chinese Department and Chinese Spring Festival preparations.   The Plaintiff was denied the opportunity to attend classes taught by native Chinese faculty and to speak briefly to students on his Chinese Studies program.    Dr. Lago delayed the approval for an advisor for Chinese Studies classes.   The Plaintiff's supervisors, Dr. Lago and Dr. Yells, were untimely in requests by Dr. Woesler to correct inaccurate information about the Plaintiff, published by Dr. Lago on February 28, 2012, and visible until August 2, 2012 on the Department website.  This information provided university students and to the public, excluded the credentials of Dr. Woesler and referred to him as "Woesler".   The fact that the Plaintiff was the Chinese Studies Coordinator was not listed.   On the same website, Dr. Yuan was referred to as "Dr. Yuan" and his position was listed as "Chinese Language Coordinator".  This incomplete information was displayed on the department's website for approximately five months, despite multiple reminders from the Plaintiff and requests for the information about him to be corrected.

   8.  The Plaintiff alleges that Dr. Yuan, on different occasions discouraged other native Chinese faculty from attending functions sponsored and promoted by Plaintiff Dr. Woesler.   As Dr. Woesler will detail below, after all of these acts and communications taken by Dr. Yuan and Dr. Lago to ensure that Dr. Woesler would not have enough students for his classes and so he would not succeed in performing his work during his first year of employment.   The Plaintiff asserts that these discriminatory acts were directly linked to the subsequent decisions of the university to deny tenure to the Plaintiff and to discharge the Plaintiff because he had been denied tenure.  The Plaintiff requests a jury trial in this matter.

## D. CAUSES OF ACTION

### *CAUSE OF ACTION 1: RACE DISCRIMINATION*

9.  Plaintiff Dr. Woesler is Caucasian male. His national origin is German.   He was born in Muenster in Westfalia (Germany).  He was on a valid work visa during his employment at the Defendant university at the time of the discriminatory acts complained of.  He complains of reverse discrimination by Utah Valley University faculty members, Dr. Guofang Yuan and his supervisor, Dr. Baldomero Lago, on the basis of protections afforded by VII of the Civil Rights Acts of 1964 and 1991, as amended, Section 1981 of the Civil Rights Act of 1866, and the Equal Protection Clause of the U.S. Constitution.  The Plaintiff alleges that during his career with the Defendant university, he successfully performed his teaching position, as reflected by performance evaluations by the employer during his employment with the university.   The Plaintiff maintains that the university, in the appointment letter of March 28, 2011 and other communications from the university (including communications on March 22nd and October 3, 2011) informed him that his tenure would be determined by three factors: 1. teaching 2. scholarship, and 3. service.    He maintains that these factors were not used to determine whether or not he would be granted tenure.    To the contrary, other factors, including factors based on an influenced by race discrimination and retaliation were used to support the denial of tenure.

10.   The Plaintiff alleges that, although he is a Caucasian male, he worked in an organization, within Utah Valley University that was predominantly staffed by native Chinese.  He had a supervisor who was Spanish.   His day to day interaction at the work place (Chinese Program) was not one of sharing his concerns as a Caucasian with a majority of other Caucasian males. He was a minority within his work organization, composed largely of staff and faculty who were members of protected minority groups (Chinese and Spanish/Hispanic).  As a result, the Plaintiff

alleges that he should be entitled to the traditional presumption of the *McDonnell Douglas* case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),  .  In the alternative, he alleges that his employer, the Chinese Program of Utah Valley University, in this case was an employer who discriminated against an employee who is a member of the racial majority and who is not in a traditional protected class.   He alleges that he suffered a number of adverse employment actions, including the denial of tenure and discharge, as well as a number of Agency sponsored materially adverse acts which, taken in a cumulative manner, formed a hostile work environment during his employment with the Defendant.  He alleges that but for his status as a Caucasian male, he would not have been exposed to the continuing harassment and hostile work environment, and the later adverse acts of denial of tenure and discharge from employment and that these adverse acts took place under circumstances giving rise to an inference of  discrimination

11.   The Plaintiff alleges that the offensive and derogatory remarks about him, based on race, questioning his competency and motivation, were not isolated, but rather, they were frequent and so severe as to create a hostile or offensive work environment ultimately ending with the denial of his tenure and his discharge from employment.  His harassers, his supervisor, Dr. Baldomero Lago, and a coworker, Dr. Guofang Yuan,   the Coordinator of the Chinese Language program, made decisions and influenced the conduct of others regarding his opportunity to teach the Chinese language.   The influenced whether or not he would be promoted to the announced Chair position for the Chinese Studies program.   They influenced whether or not to support activities sponsored and promoted by him would be successful.   They did so on the basis of his race and the Plaintiff's prior participation in opposing  discrimination based on race. The Plaintiff alleges that preferences were given by Dr. Lago and Dr. Yuan, to native Chinese language instructors,

over him, despite the fact that he had previously demonstrated his competence in the tasks

necessary to teach the Chinese language, including a PhD in Chinese Studies.  He alleges that

he was limited, segregated, and classified in a manner that deprived him of employment

opportunities in a manner that affected his status as an employee, on the basis of his race and on

the basis of retaliation.

## AGENCY REASONS TO DENY TENURE AND
## RELATED ACTS OF UNIVERSITY AGENTS

12.  In denying Dr. Woesler tenure, Dr. Lago and other agents of the University maintained

that Dr. Woesler deficient in several respects.   Dr. Woesler submits that the irony and the lack of

objectivity of Dr. Lago, Dr. Yuan, and other university employees becomes obvious by an

examination of the allegations of deficient performance and conduct when balanced with the acts

and communications of Dr. Lago, Dr. Yuan, and other university employees in the months

preceding the tenure voting.

## ALLEGATION OF A FAILURE TO CONNECT WITH NATIVE CHINESE
## PEERS AND LACK OF RESPECT FOR TRADITIONAL CHINESE CULTURE

13.  First, Dr. Lago, through his powers as the Chair of the Department, maintained that the

Plaintiff did not connect with native Chinese peers and that he did not respect traditional Chinese

culture.   Dr. Lago cited his understanding that Dr. Woesler had criticized the English

proficiency of Dr. Yuan.   Lago did not provide evidence for this allegation in the university

hearing on tenure on January 2, 2013.  The Plaintiff alleges that he informed the university that

he was aware of no occasion where he criticized the English speaking ability of Dr. Yuan.   On

the contrary, it was Dr. Yuan who had questioned the German accent of Dr. Woesler as he taught

Chinese in a written statement on November 22, 2011.  Dr. Yuan wrote that "Dr Woesler needs

to work in fluency, accuracy, articulation and intonation of Chinese speech".

14.   In regard the allegation that Dr. Woesler did not "respect traditional Chinese culture", Dr. Lago cited an incident in which "MW" (referring to Dr. Martin Woesler) had "created some marketing posters and displayed them throughout the University and Prof. Leo Chan from the Woodbury School of Business complained about MW's lack of cultural sensitivity".  Setting aside the issue of whether the repulsion of Dr. Chan to the depiction of an interracial couple (an Asian person and a person of another race) the Plaintiff informed the university that he did not create the poster,  a student had created the posters and the posters had been previously approved by the university.  A student had created the poster with the approval of the university and the student had placed the posters up on the campus.  The Plaintiff considered the poster to reflect racial diversity.  He personally considered the message to be one of hope and inclusiveness.  The Plaintiff informed the university that, after receiving notice that Dr. Chan felt offended, emailed Dr. Chan on October 4, 2012, the Plaintiff informed Dr. Chan that he welcomed his comments and that the posters had been taken down.

15.   The Plaintiff alleges that this incident illustrates the motive and intent of Dr. Lago to hype and exaggerate the true facts.   The undisputable facts were that the Plaintiff, upon receiving information that the depiction of an interracial couple was offensive to Dr. Chan, took prompt action to ensure that he was sensitive to the concerns of Dr. Chan.  The Plaintiff noted that Dr. Wright from the Dean's office, wrote to the Plaintiff on October 5, 2012, that "I do recognize that you are taking the high and practical ground in moving this thing forward and appreciate that…  we like the partnership and we like the Minor, hope it will forward well."

16.   The Plaintiff alleges that Dr. Lago communicated to the University Tenure committee that tenure should be denied to Dr. Woesler on the basis that Dr. Woesler did not connect well with his peers, although Chair Dr. Lago was fully aware of the efforts of Dr. Yuan, for a period

of months, prior to the tenure decision, to discourage native Chinese faculty from supporting or attending the events and programs sponsored and promoted by Dr. Woesler, and Dr. Lago engaged in these discouraging activities, as well.

*17.*   The Plaintiff alleges that Dr. Pang Hong, a native Chinese peer did not finalize a *letter of recommendation* in support of Dr. Woesler after a conversation with Associate Dean Dr. White, as Dr. White admitted in the hearing on January 2, 2013.   The Plaintiff alleges that Dr. Doug Jensen, a member of the Reevaluation Committee, by email notice on the Plaintiff on February 8, 2011, asked the Plaintiff to not to supply his portfolio to anybody for letters of recommendation. The Plaintiff alleges that, as a consequence, his peer, Dr. Deborah Ferreira, was hindered to finalize another solicited letter of recommendation on Dr. Woesler's scholarly and service contributions.

18.   The Plaintiff alleges that the decision of Dr. Lago and Dr. Yuan to not respond to emails sent by Dr. Woesler and the encouragement to other native Chinese faculty to do the same and to forward the emails to Dr. Lago, as admitted by Dr. Yuan in the hearing on 1/2/2013, had a direct impact upon the relationship of Dr. Woesler to his native Chinese faculty peers. In addition, the acts of Dr. Lago's and Dr. Yuan in discouraging native Chinese peers to participate in the Plaintiff's activities or to grant him access to classrooms and promotion tables had a direct impact upon the Plaintiff's relationship with native Chinese peers.

19.   The Plaintiff alleges that direct evidence exists of the bias and discriminatory intent of Dr. Lago.  He alleges that Dr. Lago admitted in emails that he intentionally did not reply to the plaintiffs emails (Email of April 7, 2012).   In an email of March 26, 2012, Dr. Lago wrote, referring to an email from the Plaintiff "Obviously I am going to ignore this email".   On September 11, 2011, he wrote in an email "I have not responded to any of those emails".

## ALLEGATION OF LOW CLASS ENROLLMENTS AND A
## FAILURE TO BUILD A CHINESE STUDIES PROGRAM

20.   The Plaintiff alleges that Dr. Lago cited low class enrollments and the failure of Dr.
Woesler to build a Chinese Studies Program, as reasons to deny Dr. Woesler tenure with the
university.   Dr. Lago noted, by referring to the Plaintiff as MW, that due to "his low class
enrollments" he (Dr. Lago) on September 22, 2011 sent an email giving specific directions to the
Plaintiff on how to increase matriculation for his classes, and he instructed the Plaintiff that
"working with colleagues was vital for a successful program" was important.   Dr. Lago later
wrote, in an effort to deny the Plaintiff tenure, that the "record and history for the past year
shows that MW has not been able to associate well with his peers" (University hearing Exhibit
P132, not provided with this complaint).

21.   The Plaintiff alleges that the enrollments in his courses were high.  He had an average of
seventeen students in his Chinese language classes, and good enrollments for upper division
history and literature classes, and the enrollment in his Chinese Studies Minor Program exceeded
the expectations as stated in the R401 of ten students within the first year.  He notes that this
enrollment was exceed threefold with thirty two students.   The Plaintiff alleges that, in the
university administrative hearing on January 2, 2013, Dr. Lago, not knowing the exact figures,
admitted that even an enrollment of 26 in the Chinese Studies Program would be a great success.

22.   The Plaintiff alleges that although Dr. Lago criticized the Plaintiff for low enrollments in
his courses, he did not assign high-enrollment classes to the Plaintiff.   The Plaintiff alleges that
Dr. Lago repeatedly discouraged and prevented students from finding classes taught by the
Plaintiff by the decisions of Dr. Lago in not displaying the courses on class advising sheets, by
not assigning a study advisor to promote the courses and by hindering promotion tables and
posters. The Plaintiff alleges that Dr. Yuan explicitly asked students not to participate in Dr.

Woesler's "Chinese lunch" because no "native Chinese speaker" was present.  In addition Dr.
Yuan advised students to not to sign up for Dr. Woesler's Chinese Studies Program, but to sign
up in his (Dr. Yuan's) Chinese Language Program instead.

   23.   The Plaintiff alleges that his work environment was permeated with other discriminatory
and hostile acts and decisions by Dr. Lago and Dr. Yuan and these acts and decisions directly
impacted the enrollment of students in his classes.  These acts and communications by Lago and
Yuan, viewed in their totality, reflect affirmative acts of sabotage and manipulation by Dr. Lago
and Dr. Yuan, on the basis of race and retaliation, to ensure that Plaintiff Dr. Woesler would not
successfully build class enrollments or build a Chinese Studies Program.  These acts include, but
are  not limited to the decision of Dr. Lago to withdraw support to advertise the Chinese Program
on September 17, 2012, the failure to respond to approximately seventeen  work-related issues
raised in the emails sent to Dr. Lago and Dr. Lago's subordinate, Dr. Yuan, the lack of
assignments for the Plaintiff to teach Chinese language courses and the substitution of Adjunct
Native Chinese faculty to replace the Plaintiff in teaching Chinese, the limitation of budgets and
financial resources related to the Chinese Studies Program, the diversion of a research assistant
support staff who had been previously available to the Plaintiff, the delay in appointing an
advisor for the Chinese Studies Program, the delay in correcting advising sheets for the Chinese
Studies Program, the delay in correcting website inaccuracies describing Dr. Woesler and the
program, the exclusion from the Chinese Promotion table for the Chinese Language students, the
refusal of Dr. Yuan and other native Chinese faculty to allow Dr. Woesler to make brief class
presentations on the Chinese Studies program, the refusal to grant Dr. Woesler access to the
PowerPoint presentation on the Chinese Study Abroad Program, the refusal to allow Dr. Woesler
to participate in the preparations for the Chinese Spring Festivals and other activities like the

Chinese Language Contest, the Chinese Summer Days, the Study Abroad Programs, the Partner

University programs, and to acts of discouraging native Chinese peers to participate in the

Plaintiff's activities, including the Chinese Studies Conferences, Chinese Program faculty

meetings, and Chinese Lunches.

## ALLEGATION OF LACK OF LEADERSHIP

24.  Dr. Lago argued that the Plaintiff should be tenure on the basis of leadership.  The vigor

in which Dr. Lago and Dr. Yuan opposed the successful performance of teaching and

professorship responsibilities of the Plaintiff may have resulted from the decision of the Plaintiff

to share with these two faculty members, the promises made to him by Dean Dr. Yells and

Associate Dean Dr. White while Dr. Woesler was still at a Harvard sabbatical of his

professorship at a German University.   The Plaintiff was tenured at the German university in

2007.   The Plaintiff shared with these faculty members, the written promise, sent to him on

March 22, 2011 from the university that he (Dr. Woesler) could anticipate be named as the

Chair/Director of a Chinese Studies Center/Program and that he (Dr. Woesler) and Dr. Yuan

would share in the direction of three China-related study programs planned for the College of

Humanities and Social Sciences.

25.  The Plaintiff alleges that Dr. Lago ignored that he (Dr. Woesler) had documented his

success in building the Chinese Studies Program in the "Report on the Successful Start of the

Chinese Studies Minor", which Dr. Woesler had handed to Dr. Lago on September 12, 2012.

The Plaintiff alleges that the conduct of Dr. Lago is consistent with one who did not want to

acknowledge any success in his (the Plaintiff's) work and career.  The Plaintiff alleges that an

examination of the allegations and related communications reveal that not only was Dr. Lago

attacking the Plaintiff's leadership style, but Dr. Lago and Dr. Yuan had a strong concern that

Dr. Woesler not acquire significant power and authority within the Chinese Studies program.

Dr. Lago on February 22, 2012 cited the lack of support from colleagues for the China's Global

Impact Conference as a basis for denying tenure to the Plaintiff.   Lago informed the tenure

committee that Dr. Woesler did not conduct any services for the university, although a list of

services was agreed to in the Annual Plan of August 15, 2011.  In addition, Dr. Lago mocked the

Plaintiff's leadership and academic credentials, noting that the Plaintiff "titled himself as

"Chinese Project Director".   The Plaintiff alleges that he never entitled himself as such.   In

addition, Dr. Lago noted that the Plaintiff "claims wrongly to be the President of the

International Postgraduate School of Humanities at UVU.  The Plaintiff alleges that he served in

this position and this function and it was approved by the Dean Dr. Yells on March 22, 2011.   In

addition, Dr. Lago indicated that that he were too many inquires about the position of new

faculty so that he (Dr. Lago) had to say that Dr. Woesler had "no leadership role".  In addition,

Dr. Lago cited an example when "Dr. Alex Yuan decided to create a Chinese Language

Promotion Table, MW  (Dr. Woesler) [expected] full control and collaboration.  Lago cited an

incidents which he considered a lack of leadership, including the fact that taking minutes of

"Chinese Initiative Committee" meetings was a sign of 'leadership', which was not asked for."

The Plaintiff alleges that he did not take notes of these committee meetings, but only of

subcommittee meetings.   In addition, Dr. Lago cites, as a reason for tenure denial, that "rather

than collaborate and work cohesively with academic advisors, MW (Dr. Woesler) [took] his own

initiative which [led] to confusion and frustration for many individuals on campus. This is a

perfect example where MW creates his own advising sheets" (Exhibit P124).

   26.  The Plaintiff alleges that in response to these allegations relied by Dr. Lago to establish

that the did not have leadership, the Plaintiff  rebutted specific examples and he had twenty

letters of recommendation from peers and senior directors on campus regarding the observations

of these faculty members and staff regarding the leadership and the reputation which the Plaintiff

held with these faculty members and staff.    In addition, the Plaintiff alleges that he worked in a

successful with faculty members, including study advisor Lynne Hetzel and others.  He alleges

that he never created his own advising sheets and that he only asked for corrections of the

misleading advising sheets, which had been created by Dr. Lago.

27.  The Plaintiff alleges that the disdain that Dr. Lago had for Dr. Woesler is reflected in an

email, authored by Dr. Lago on September 11, 2011.  Lago wrote at 10:41 A.M to Associate

Dean Dr. White, in referring to the Plaintff that "*we literally need to stop him*" (Exh. P018).   In

an email which Dr. Lago wrote to the Dean, Dr. Yells on March 26, 2012, Lago referred to the

meeting minutes taken by Dr. Woesler as *"Bullshit*", and he elaborated "*I don't know if you want

to put a stop to this but he needs to understand that he is not in charge. We don't bow to him and

I don't need a record keeper. You make all final decisions, boss*!"

28.  The threat of competition feared by Dr. Yuan, posed by a successful year of performance

by Dr. Woesler, was highlighted by a sign which Dr. Yuan posted outside his office on

November 5, 2011, changing his prior official designation from *Assistant Professor of Chinese* to

*Program Coordinator Chinese,* even though the Chinese Program had been split up in "Chinese

Language" and "Chinese Studies" with Coordinators only for these subprograms and he was only

the  coordinator for "Chinese Language".  From November 15, 2011, Dr. Yuan referred to

himself as the representative of the "Chinese" rather than "Chinese Language" during

Department Faculty Meetings.   The race and national origin of faculty members became more

focused by these acts taken by Dr. Lago and Dr. Yuan.

## ALLEGATION OF LACK OF COLLEGIALITY

29.   Dr. Lago cited, what he labeled as an altercation in a discussion between the Plaintiff and a university administrative assistant, Ms. Carol Morgan, as a justification to deny the Plaintiff tenure as a professor with the university.    Plaintiff acknowledged that he was assertive with Ms. Morgan, but not aggressive or confrontational, at a time he had just discovered that he was being excluded from the Promotion Tables and the opportunity to build the Chinese Studies Program. Dr. Lago chose to rely on this incident to illustrate a lack of collegiality.  Associate Dean Dr. White finally decided that Dr. Woesler should not be excluded from the Promotion table.  In addition, Dr. Lago relied upon the allegation that the Plaintiff had expressed an opinion about Dr. Yuan's English Ability to Fulbright Assistant Celine (LuShan Lu to establish that Dr. Woesler is not congenial to others. The Plaintiff alleges that he informed the university that he had not expressed any opinion about Dr. Yuan's English Ability to anybody.   Finally, Dr. Lago relied upon the fact that Dr. Yuan had expressed the opinion that "Professor Woesler's name should not appear in project. He will not do anything".  Dr. Lago asserted to the tenure committee that this opinion was commonly shared by colleagues.  The Plaintiff alleges that the fact that he is assertive when protecting his civil rights including his academic freedom, upon discovering a new incident in a continuing hostile work environment, the allegation that he expressed an opinion about Dr. Yuan, or the fact that Dr. Yuan did not want to work with him on a project - reveals the subjective judgments relied upon Dr. Lago to ensure that Dr. Woesler would not receive tenure with Utah Valley University.   The accuracy or context of these hearsay statements regarding accusations or concerns about Dr. Woesler appear to be untested.   This "evidence in support" of denying Dr. Woesler tenure, as produced by Dr. Lago reveals a reckless

disregard to understand the truth of the matter and a rush to ensure that Dr. Woesler would not

hang around the university long to pose a threat to the careers of Dr. Lago and Dr. Yuan.

## ALLEGATION THAT THE PL ESTIMATED
## AN INCORRECT FIGURE FOR PRESS RELEASE

30.   Dr. Lago cited another reason to deny Dr. Woesler tenure- that Dr. Woesler had issued a

press release, by himself and exaggerated figures of Chinese language course enrollment in high

schools, which made a bad impression on Utah State Office of Education (USOE).  The Plaintiff

alleges that he noted for the tenure committee that he had wrong data regarding the high school

enrollments.   He issued no press release, but rather the communication was in an internal email

correspondence within the university.  The Press Release was written by Mike Rigert, who asked

Dr. White for a statement and Dr. Woesler for estimates.  Mr. Rigert first used Dr. Woesler's

estimates and Dr. Woesler corrected these later, so that the press release was corrected. The

Plaintiff alleges that the fact that Dr. Lago and Dr. Yuan had the correct data, that he had in vain

asked them to provide this data, and they deliberately failed to respond back to Dr. Woesler with

the correct information provides further evidence of a desire to hinder Dr. Woesler in the

performance of his job.

31.   Dr. Woesler alleges that the fact that Dr. Lago and Dr. Yuan knew the correct

information and did not respond to Dr. Woesler and correct the information internally and Dr.

Lago still chose to rely on this incident as a basis to deny Dr. Woesler tenure provides further

evidence of the discriminatory intent and motive of Dr. Lago. Although the plaintiff had sent Dr.

Lago an "internal discussion paper" (attachment of Exhibit P142) about estimated High School

Chinese student figures, and asked him to help him to correct the figures, Dr. Lago forwarded

this internal paper to the World Language Specialist at the Utah State Office of Education Gregg

Roberts, claiming it was a "public lecture" given by the plaintiff at a conference on campus.

Mr. Roberts, on April 7, 2012, wrote back to him, that he would delete the plaintiff's emails and would ask his staff to do so too.  The Plaintiff alleges that Gregg Roberts also gave hints regarding how to correct the figures related to the enrollment in Chinese language courses, but Dr. Lago did not pass this information on to the Plaintiff.

### PL VIOLATED CHAIN AND COMMAND AND DID NOT FOLLOW THE RULES

32.  Dr. Lago cited as a reason to deny Dr. Woesler tenure the fact that Dr. Woesler, in essence, violated the chain of command and he did not follow the department and university rules.  Lago cited as examples that the Chinese Studies course submission was conducted through the Integrated Studies Program (IDST) and that the Department of Languages was "completely ignored in this process," the fact that with Dr. Woesler "curriculum procedure and scheduling process was ignored", and the fact that Dr. Woesler kept the Department Chair "out of the loop of things".   The Plaintiff alleges that the email Dr. Lago provides as a proof in the university tenure hearing on January 2, 2013 related to an incident in which the Plaintiff the Conference organizing committee members that he acquired funding from the Confucius Institute for the conference. At that time, Dr. Lago was in Spain and the Plaintiff informed Dr. Lago immediately upon his return.  The Plaintiff notes that Dr. Lago had explicitly asked not to be part of the Organizing Committee of the conference and the Plaintiff simply used the existing distribution list of the organizing committee, which consisted of members from different departments of the university.   The Plaintiff was not aware that he was expected to add all department chairs of all committee members into that distribution list.

33.  Dr. Woesler responded to the Tenure Appeal Committee that the software system technically required him to go through IDST regarding the Chinese Studies Course submission process.  In an email dated September 17, 2012, Dr. Lago admitted that he knew that the Chinese

Studies Courses technically were housed by IDST and not the Language Department. The Plaintiff alleges that Dr. Lago, threatened, in this email withdraw his support for the Chinese Studies Courses.   Lago wrote that "being housed under a different department, excludes us from promoting or advertising this program."   The Plaintiff alleges that since he still wanted to get Dr. Lago involved, he (the Plaintiff) manually added an additional approval queue for Dr. Lago into the system.

## THE ALLEGATION THAT THE PLAINTIFF ENGAGED IN AN INAPPROPRIATE ROMANTIC OR SEXUAL HARASSMENT WITH A FEMALE FACULTY MEMBER

34.   Dr. Lago argued that tenure should be denied the Plaintiff due to an event in which Dr. Woesler invited a female faculty member, Celine Shan Lu, to join him in a nonalcoholic smoothie.  This event was branded by Dr. Lago as an *inappropriate invitation*. The Plaintiff alleges that by the time Dr. Lago relied upon this allegation against the Plaintiff, Lago knew or should have known that Ms. Lu declined Dr. Woesler's invitation to get together and Plaintiff did not pursue the matter any further after he received Ms. Lu's decision to decline his request to meet together.   The Plaintiff alleges that Dr. Lago knew or should have known that the fact that a declination to meet with another faculty member was not inappropriate conduct or sexual harassment under existing law.  It appears that the objectionable nature to Dr. Lago may have been the fact that Dr. Woesler, a Caucasian male, was asking for a meeting with Ms. Lu, a native Chinese female, a mixed race theme that appeared objectionable to Dr. Lago in the incident involving a poster depicting a mixed race couple and found objectionable by native Chinese professor, Dr. Chan and the issue of "cultural sensitivity".   Dr. Woesler asserts that his race and national origin were central to the objection of Dr. Lago in hyping this social interaction ending in a declination to an invitation to meet into a charge of *inappropriate conduct* and *allegations of sexual harassment*.

35.   The fact that Dr. Lago chose to rely on this incident is illustrative of his motive and intent.   The Plaintiff alleges that Dr. Lago required the Plaintiff within months of his arrival at the university (including emails on August 15, 2011 and September 22, 2011) to connect with each faculty member in the department and to engage in some social activity with that faculty member, including sports activities and other events.   The Plaintiff alleges that his contact with Ms. Lu, was admittedly awkward and obscure by an interaction between two individuals from different cultures, but his motivation was based on the requirement of Dr. Lago to engage in at least one activity with each faculty member, including Ms. Lu.   The Plaintiff alleges that Dr. Lago failed to mention this fact to the tenure committee when he cited this incident as a basis to deny Dr. Woesler tenure at the university.   The Plaintiff alleges that, in addition to Lago's silence on the assignment he gave to the Plaintiff to connect with every faculty member, Dr. Lago did not note for the tenure committee that Dr. Woesler refrained from inviting Ms. Lu to any future social events.

## THE ALLEGATION THAT THE PLAINTIFF MISREPRESENTED MEETING NOTES DUE TO THE REACTION OF DR. YUAN

36.   The Plaintiff alleges that Dr. Lago identified a basis to deny Dr. Woesler tenure in the fact that Dr. Yuan had a visible reaction that Dr. Woesler had "misrepresented" something in the meeting notes Dr. Woesler took.   The Plaintiff alleges that Dr. Yuan does not specify the allegation regarding what information had been misrepresented.   The Plaintiff alleges that he denied, to the tenure committee, any allegation that he falsified or misrepresented any meeting in his meeting notes.   The Plaintiff alleges that he was encouraged to take personal notes and to send it to all participants of the meeting to enhance reliability. He expressly asked if the notes were correct or if anybody had corrections.   He alleges that no one identified the need for corrections.  The Plaintiff alleges that this incident chosen by Dr. Lago to deny the Plaintiff

tenure provides further evidence of pretext and a discriminatory bias, motive, and intent on the part of Dr. Lago and Dr. Yuan.

## THE ALLEGATION THAT THE PLAINTIFF NOT SHOW
## SUFFICIENT EFFORT TO OBTAIN TENURE

37.   The Plaintiff alleges that this allegations is perplexing in view of the criticism of Dr. Lago and Dr. Yuan that the Plaintiff was too aggressive and took matters into his own hands too often.  This allegation directly conflicts with other conduct which the Plaintiff is alleged to have engaged in.   In view of all of the energy and acts for which the Plaintiff was criticized by Dr. Lago and Dr. Yuan as overstepping and too energetic or controlling, this allegation rings hollow regarding the efforts of the Plaintiff in obtaining tenure, after he left his tenured position at a German University, moved to the State of Utah, and relied upon the promises extended to him by senior faculty at Utah Valley University.

### *CAUSE OF ACTION 2: RETALIATION*

38.   The Plaintiff incorporates by reference all allegations set forth in the preceding sections in this section regarding the claim of retaliation against the Defendant University.   The Plaintiff alleges that he was retaliated against on the basis of his prior protected activity and participation in the EEO process including contacting the University EEO Officer and his opposition to racial discriminatory practices of Dr. Yuan, Dr. Lago, and other agents of the Defendant University, as prohibited by VII of the Civil Rights Acts of 1964 and 1991, as amended, Section 1981 of the Civil Rights Act of 1866, all as amended, and the Equal Protection Clause of the U.S. Constitution.

## PROTECTED ACTIVITY AND PARTICIPATION IN
## THE EQUAL EMPLOYMENT OPPORTUNITY PROCESS

39.   The Plaintiff alleges that he engaged in protected activity when on July 29, 2011, at 10:00

A.M. he met with Dr. White, the Dean of the Language Department and he informed Dean Dr.

White that Dr. Yuan had shared a racist comment that a white man would be handicapped as a

teacher of the Chinese language.   Dr. White, upon receiving the information of Dr. Yuan's view

of the link between race and teaching the Chinese language, stated to Dr. Woesler "Good.  He

accepts you as a teacher".   Dr. Woesler next engaged in protected activity when he met with

Dean Dr. Yells on August 19, 2011 at 8:00 A.M. and informed Dr. Yells of the views of Dr.

Yuan.   Dr. Yells response was "You teach, so he will get used to it".

   40.   On July 16, 2012, Dr. Woesler filed an appeal to the Faculty Senate President.   The

appeal focused on the denial of tenure, termination, and Dr. Woesler's opposition of the racial

discrimination of the university.   During February, 2012, Dr. Woesler met with Assistant to the

University President, Elaine Englehardt and he informed her of his view of the racial

discriminatory practice by agents of the university.    Ms. Englehart recommended that Dr.

Woesler joint the professional union, AAUP and he did so.   The AAUP initiated an investigation

and confirmed in two reports the policy violations in denying Dr. Woesler tenure.   Dr. Woesler

informed the University EEO Officer, Mark Olson every few months about what the Plaintiff

termed "unequal treatments" and the discriminatory conduct he was experiencing, and the

Plaintiff informed the University EEO Office and the Plaintiff informed the University EEO

Officer about his (the Plaintiff's ) desire to file a charge of discrimination during October, 2012

and January, 2013.   Dr. Woesler understood, based on his conversation with the University EEO

Officer, that he should first follow the university appeal process and he did so.

### MATERIALLY ADVERSE ACTS TAKEN AGAINST THE PLAINTIFF

   41.   The Plaintiff alleges that he was subjected to a number of adverse acts by the Dr. Lago,

Dr. Yuan, and other management employees of the Defendant University after he had engaged in

protected activity by Title VII of the Civil Rights Acts 1964 and 1991, Section 1981 of the Civil

Rights Act of 1866, all as amended, and the Equal Protection Clause of the U.S. Constitution.

Dr. Woesler alleges that he was informed on August 15, 2011, about the Chair's intention to

deny tenure, subsequent to engaging in protected activity.   He was subjected to a continuing

hostile work environment, as set forth above, with increasing intensity and frequency of adverse

acts and communications after he engaged in protected activity.   Dr. Woesler alleges that he was

denied tenure as a faculty member and he was ultimately discharged from employment with a

continuing stigma attached to his professional competency due to his firing by the Defendant

University.   He alleges that a reasonable employee would have found the challenged action

materially adverse.

### A CAUSAL CONNECTION EXISTED BETWEEN THE PROTECTED ACTIVITY ENGAGED IN BY THE PLAINTIFF AND THE ADVERSE ACTION HE WAS SUBJECTED TO

42.   The Plaintiff alleges that a causal connection existed between his protected activity of

opposing discriminatory conduct on the basis of race and the materially adverse action which

followed.   He alleges that direct evidence and indirect, circumstantial evidence, as detailed

above, exists to establish the nexus between his protected activity and the adverse agency acts

against him.

43.   Dr. Woesler alleges that Dr. Yuan's view that "A white guy like you should better not

teach Chinese language courses." (words to the effect on July 20, 2011) and the email of Dr.

Lago calling the plaintiff's notes "Bullshit" (March 26, 2012) and Lago's statement, on the same

date by email, to the superiors of Lago and the Plaintiff that "I don't know if you want to put a

stop to this but he needs to understand that he is not in charge. We don't bow to him and I don't

need a record keeper. You make all final decisions, boss!", and the email of Lago on September

11, 2011 that "we literally need to stop him" to upper level supervisors referring to the Plaintiff, provide direct evidence of the motive and intent of Dr. Lago and Dr. Yuan.

44.   The Plaintiff alleges that indirect, circumstantial evidence provides a basis to establish a discriminatory intent in this case.  He alleges that pretext for race discrimination is established by the acts of Dr. Lago and Dr. Yuan against himself (the Plaintiff), including the practice of shunning and the practice of Dr. Lago to not reply to the emails of Dr. Woesler and to have subordinate faculty members forward the emails to Dr. Lago.

45.   The Plaintiff alleges that evidence of disparate treatment is presented in a comparison of Dr. Yuan and the Plaintiff, including the treatment of Dr. Yuan, a native Chinese faculty member, and the Plaintiff, including but not limited to the assignment of teaching courses, the assignment of office space, the funding of the programs and activities taught by the Plaintiff and by Dr. Yuan.

46.   The Plaintiff alleges that temporal proximity exists between the Plaintiff's reporting of the view of the handicap of white teachers of July 20, 2011, and the Chinese language to Dean White July 29, 2011, and the subsequent adverse acts constituting a continuing pattern and practice of harassment and a hostile work environment and culminating in the denial of his tenure and his subsequent termination from employment.

### E. INJURY AND DAMAGES

47.   The Plaintiff re-alleges and incorporates by reference all prior paragraphs set forth in this Complaint, as if set forth in full, in support of his prayer for damages in this matter.
The decision to deny tenure to the Plaintiff lead to the discharge of the Plaintiff.    The Plaintiff seeks reinstatement to his university position, the cleansing of all negative references in official university files and his personnel file, the correction of inaccurate information conveyed to third

parties regarding his professional competency, he restoration of all lost back pay and benefits, and reasonable attorney fees and costs.

## F. CONCLUSION AND REQUEST FOR RELIEF

48.   The Plaintiff alleges that the Defendant Employer's conduct has directly caused him to suffer the consequences of intentional discrimination on the basis of race and retaliation.   The Defendant's conduct has occurred due to intentional conduct and a reckless disregard for the Plaintiff's federally protected rights, and the resulting actual damages include his inability to progress in his career and to engage in meaningful employment in teaching profession.   He seeks all relief set forth in the preceding section, including restoration of his employment, all lost pay and benefits, reasonable attorney fees and costs, all other relief available under the law.

DATED this 14th day of November, 2013.

/s/

_____
**JAMES R. TANNER**
**ATTORNEY FO R PLAINTIFF**